UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
TALIK GARCIA, on behalf of himself,
FLSA Collective Plaintiffs, and the Class,

Plaintiff,

-against-

POP A LOCK NEW YORK INC., AUTOMOTIVE LOCKSMITH SUPPLY INC., ALL CITY SERVICES & DISPATCH INC., CARL NAPOLITANO, NICHOLAS NAPOLITANO, and JENNIFER CANNIZZARO,

Defendants.
-------------------------------------------------------X

MEMORANDUM
AND ORDER
22 CV 5305 (RML)

LEVY, United States Magistrate Judge:

This case is before me on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Consent to Magistrate Judge Jurisdiction, so ordered Sept. 29, 2023, Dkt. No. 24.) On March 13, 2026, plaintiff filed his third motion for default judgment and attorney's fees. (Third Motion for Default Judgment and Attorney's Fees, dated Mar. 13, 2026, Dkt. No. 64.) For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Talik Garcia ("plaintiff" or "Garcia") initiated this action against his former employers, Pop A Lock New York Inc. ("Pop A Lock"), Automotive Locksmith Supply Inc. ("Automotive"), All City Services & Dispatch Inc. ("All City") (collectively, the "corporate defendants"), and Carl Napolitano, Nicholas Napolitano, and Jennifer Cannizzaro (collectively, the "individual defendants") (together with the corporate defendants, "defendants") for alleged violations of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), New

York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). (Complaint, filed Sept. 7, 2022 ("Compl."), Dkt. No. 1.) The following facts, as drawn from the complaint and affidavits, are accepted as true for the purposes of this motion. (Id.; Declaration of C.K. Lee, Esq., sworn to Mar. 13, 2026 ("Lee Decl."), Dkt. No. 65; Declaration of Talik Garcia, sworn to Aug. 28, 2024 ("Garcia Decl."), Dkt. No. 66.)

**I. Facts**

Defendants own and operate a locksmith business at 765 Forest Avenue, Staten Island, New York. (Compl. ¶ 9.) Each of the corporate defendants is a domestic corporation with a principal place of business located at 765 Forest Avenue, Staten Island, New York. (Id. ¶¶ 10–12.) The individual defendants own and operate Pop A Lock and Automotive, exercise operational control over the corporate defendants, and exercise the power to (i) hire and fire employees, (ii) supervise and control employee work schedules, (iii) determine the rate and method of employee pay, (iv) maintain employment records, and (v) otherwise affect the quality, terms, and conditions of employment. (Id. ¶¶ 13–15.) Defendants' roadside assistance services generated gross yearly revenues of between approximately $2,190,000 and $3,650,000 during plaintiff's employment. (Garcia Decl. ¶ 10.)

Plaintiff, a Kings County resident, worked for defendants as a driver from around October 2021 until June 26, 2022. (Id. ¶ 3; Compl. ¶¶ 7, 30.) Plaintiff performed personal roadside assistance services, including changing flat tires, providing gas, and jumpstarting car batteries. (Garcia Decl. ¶ 6.) Throughout plaintiff's employment, defendants required him to use vehicles, supplies, and equipment that were imported into New York and purchased from vendors located within and outside New York. (Id. ¶ 12.) Defendants' retail products were also imported into New York. (Id.)

"From the start of his employment until in or around November 2021," plaintiff worked twelve hours per day five days per week for a total of sixty hours per week. (Compl. ¶ 31.) "From in or around November 2021 until the end of his employment," plaintiff worked eight hours per day three times per week and twelve hours per day twice per week for a total of forty-eight hours per week. (Id.; see also Garcia Decl. ¶ 4.)

Plaintiff's regular and overtime pay rates were $16 and $24 per hour, respectively. (Compl. ¶ 32; Garcia Decl. ¶ 5.) However, due to defendants' policy of rounding down daily hours worked to the nearest hour, plaintiff was not paid overtime for all hours he worked over forty each week. (Compl. ¶¶ 34–35.) Plaintiff also spent between approximately $400 and $650 per week to maintain the company vehicle and purchase his own tools, "such as jacks, jumper cables, slim jims, wheel lock tools and air compression tools," none of which defendants reimbursed. (Id. ¶ 36; see also Memorandum of Law in Support of Third Motion, dated Mar. 13, 2026 ("Mem."), Dkt. No. 58, at 6–7 ("Plaintiff was required to spend approximately $400.00 per week, to (i) maintain the company vehicle Defendants provided him (including gas) and (ii) purchase tools necessary for the performance of duties Defendants assigned to him.").) Additionally, plaintiff claims that defendants "failed to provide wage and hour notices, at the date of hiring and annually thereafter," (Compl. ¶¶ 37, 40), and that his wage statements were inaccurate (id. ¶ 38).

The complaint further alleges that plaintiff suffered constant abuse and harassment at work on account of his race. (Id. ¶¶ 42–46.) "Throughout his employment," plaintiff, who is African American, "was constantly, on a daily basis, called 'nigger' by his Manager Luis." (Id. ¶ 43 ("Luis [ ] would say things like, 'What's up Nigger?' and 'Hurry up Nigger.'").) Plaintiff told his manager "several times" that "he did not want to be called a

'Nigger'" but "Luis continued to call Plaintiff a 'Nigger.'" (Id. ¶ 44.) Plaintiff and other African American employees "were given the hardest routes" and plaintiff "was given a car without air conditioning." (Id. ¶ 45.) "When Plaintiff complained about this to Manager Luis, nothing was done." (Id. ¶ 46.)

## II. Procedural History

On September 7, 2022, plaintiff initiated this action against defendants, seeking unpaid wages, unreimbursed costs for tools of the trade, liquidated damages, and attorney's fees and costs under the FLSA, 29 U.S.C. §§ 201 *et seq.* and NYLL; statutory penalties under NYLL; and back wages, compensatory and punitive damages, and attorney's fees and costs under the NYSHRL and NYCHRL. (Compl. ¶¶ 1–4.) Defendants appeared through counsel on November 2, 2022 (Notice of Appearance, dated Nov. 2, 2022, Dkt. No. 12), and filed an answer on December 9, 2022 (Answer, dated Dec. 9, 2022, Dkt. No. 17). After an unsuccessful mediation and stalled discovery, counsel for defendants, Michael J. DeSantis, Esq., moved to withdraw his representation, citing an "irretrievably broken down" attorney-client relationship. (Motion to Withdraw as Attorney, dated Feb. 6, 2024, Dkt. No. 35, ¶ 6.) Plaintiff opposed the motion to withdraw and "cross-moved" for sanctions and attorney's fees of $58,330, "incurred in chasing after Defendants to fulfill their discovery obligations." (Plaintiff's Cross-Motion for Sanctions, dated Feb. 23, 2024, Dkt. No. 36; Memorandum in Opposition to Motion to Withdraw and in Support of Motion for Sanctions, dated Feb. 23, 2024, Dkt. No. 37, at 1.)

On April 30, 2024, I conditionally granted Mr. DeSantis's motion to withdraw and ordered defendants to retain new counsel by May 31, 2024. (Minute Entry, dated Apr. 30, 2024; see also Order granting Motion to Withdraw as Attorney, dated July 5, 2024.) I specifically warned the corporate defendants that if they failed to obtain new counsel by May 31,

2024, they would be deemed to be in default. (Id.) I also advised the individual defendants that if they did not obtain new counsel by May 31, 2024, they should be prepared to proceed *pro se*, and I ordered all defendants to file complete responses to plaintiff's outstanding discovery requests on or before May 22, 2024. (Id.) No new counsel appeared on defendants' behalf, and defendants failed to respond to the discovery requests. I therefore granted plaintiff's request to move for default judgment. (Order, dated June 10, 2024.) On August 1, 2024, I denied plaintiff's motion for sanctions and directed plaintiff to include any request for attorney's fees and costs with the motion for default judgment. (Order, dated Aug. 1, 2024.)

Plaintiff first moved for default judgment and attorney's fees on August 29, 2024. (Plaintiff's First Motion for Default Judgment, dated Aug. 29, 2024, Dkt. No. 50.) I denied that motion for failure to comply with Local Civil Rule 55.2(a)(3) and the Servicemembers Civil Relief Act ("SCRA"), 50a U.S.C. § 521, and granted plaintiff thirty-days' leave to correct and renew his motion. (Order, dated Feb. 28, 2025, Dkt. No. 54.) Plaintiff filed his second motion on March 26, 2025. (Second Motion for Default Judgment and Attorney's Fees, dated Mar. 26, 2025, Dkt. No. 55; Memorandum of Law in Support of Second Motion, dated Mar. 26, 2025, Dkt. No. 58.) Although that motion complied with the SCRA, it remained deficient under Local Civil Rule 55.2(a)(3). I therefore denied it and granted plaintiff sixty-days' leave to correct and file a third motion for default judgment. (Order, dated Dec. 15, 2025, Dkt. No. 60.) I warned plaintiff that failure to timely renew may lead to the complaint's dismissal. (Id.) Plaintiff let the sixty-day deadline pass and, on March 3, 2026, I dismissed the case for lack of prosecution. (Order, dated Mar. 3, 2026, Dkt. No. 61; Judgment, dated Mar. 4, 2026, Dkt. No. 62.) Plaintiff filed a motion to reopen the case on March 4, 2026, which I granted on March 8, 2026. (Motion to Reopen, dated Mar. 4, 2026, Dkt. No. 63; Order, dated Mar. 8, 2026.) On March 13, 2026,

plaintiff filed the instant unopposed motion for default judgment and attorney's fees. (Third Motion for Default Judgment, dated Mar. 13, 2026, Dkt. No. 64.)[1]

## DISCUSSION

### I. Default Judgment Legal Standard

Federal Rule of Civil Procedure 55 imposes "a two-step process for obtaining a default judgment." Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011). First, if a defendant fails to appear, plaintiffs must obtain an entry of default by the clerk of the court. Id. (citing FED. R. CIV. P. 55(a)). Second, once default is entered against the non-responsive defendant, plaintiffs "must apply to the court for a default judgment." FED. R. CIV. P. 55(b)(2).

In deciding a motion for default judgment, the court is required to accept all of the plaintiff's factual allegations as true and draw all reasonable inferences in his favor. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Payamps v. M & M Convenience Deli & Grocery Corp., No. 16 CV 4895, 2019 WL 8381264, at *5 (E.D.N.Y. Dec. 9, 2019) (citation omitted).

If the complaint suffices to establish liability, the court must "conduct an inquiry . . . to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." Sanchez v. Ms. Wine Shop Inc., 643 F. Supp. 3d 355, 365 (E.D.N.Y. 2022) (quoting Joe Hand

[1] In compliance with Local Civil Rule 55.2(a)(3), plaintiff's counsel certified that he mailed all documents in support of plaintiff's third motion for default judgment to defendants at their last known addresses. (Certificate of Service, dated Mar. 16, 2026, Dkt. No. 68.)

Promotions, Inc. v. Benitez, No. 18 CV 6476, 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), report and recommendation adopted, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020)); see also Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991). "When a defendant defaults in an action brought under the FLSA, the plaintiff's recollection and estimates of hours worked are presumed to be correct." Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (citation omitted).

## II. Wage and Hour Claims

Plaintiff argues that he is entitled to default judgment for defendants' failure to pay time-and-a-half for all overtime hours worked (Compl. ¶¶ 59, 63–64), to reimburse him for "tools of the trade" (id. ¶ 65), and to furnish him with a wage notice or wage statements (id. ¶¶ 66–67).

### A. FLSA Liability

#### i. Employment Relationship

To establish a claim under the FLSA, a plaintiff must show that there was an employment relationship between the plaintiff and the defendants as defined by the FLSA. See Gangadharan v. GNS Goods & Servs., No. 18 CV 7342, 2022 WL 824135, at *10 (E.D.N.Y. Mar. 18, 2022). The FLSA broadly defines an employer as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d), (e)(1). "[E]mployment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013) (quoting Barfield v. NYC Health & Hosps. Corp., 537 F.3d 132, 141–42 (2d Cir. 2008)). "[A]n employee may be jointly employed by two or more employers," and "[i]n such cases, joint employers are subject to joint and several liability for FLSA

violations." Michalow v. E. Coast Restoration & Consulting Corp., No. 09 CV 5475, 2017 WL 9400690, at *4 (E.D.N.Y. July 11, 2017), report and recommendation adopted, 2018 WL 1559762 (E.D.N.Y. Mar. 31, 2018).

The Second Circuit has adopted a multi-factor test based on "economic reality" to determine whether an employment relationship exists between a plaintiff and defendant. Irizarry, 722 F.3d at 104–05. The test asks whether the alleged employer-defendant "(1) had the power to hire and fire the employees, (2) supervised and controlled [employees'] work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. at 105 (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)). The test looks at the totality of the circumstances, and no individual factor is dispositive. Id. The allegations in the complaint and plaintiff's declaration show that he had an employment relationship with defendants. Specifically, plaintiff alleges that defendants employed him as a driver between October 2021 and June 26, 2022 (Compl. ¶ 30), and that the individual defendants exercised "the authority to hire and fire [employees], supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise[d] Plaintiff . . . ." (Id. ¶¶ 13–15.) I find these allegations sufficient to find an employment relationship within the meaning of the FLSA to impose liability on defendants. See Gangadharan, 2022 WL 824135, at *10.

ii. Interstate Commerce Requirement

The FLSA further requires that the plaintiff-employee be (1) "engaged in commerce or the production of goods for commerce" or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). To be an

"enterprise engaged in commerce," the defendant-employer must have (a) an annual gross sales volume of at least $500,000, and (b) "employees handling, selling or otherwise working on goods or materials that have been moving in or produced for commerce by any person." Brito v. Marina's Bakery Corp., No. 19 CV 828, 2022 WL 875099, at *7 (E.D.N.Y. Mar. 24, 2022) (citing 29 U.S.C. § 203(s)(1)(A)). Plaintiff alleges that "[d]efendants' roadside assistance services alone generated gross yearly revenues of approximately $2,190,000 to $3,650,000" (Garcia Decl. ¶ 10), and that he handled vehicles, supplies, and equipment that defendants purchased from out-of-state vendors and imported into New York (id. ¶ 12). Defendants, therefore, are an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

B. NYLL Liability

To prevail on his NYLL law claims, plaintiff must establish that his employment relationship with defendants is covered under the NYLL, which extends to "any person employed for hire by an employer in any employment." N.Y. Lab. L. § 190. Unlike the FLSA, NYLL does not require that a defendant achieve a certain minimum in annual sales or business to be subject to the law. Garcia v. Badyna, No. 13 CV 4021, 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. See Mahoney v. Amekk Corp., No. 14 CV 4131, 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status), report and recommendation adopted, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016). Because plaintiff has an employer-

employee relationship with defendants under the FLSA, plaintiff also has an employer-employee relationship with defendants under NYLL.[2]

C. Violations and Damages

Having found that plaintiff qualifies for protection under the FLSA and NYLL, the court next decides whether plaintiff is entitled to default judgment on his wage and hour claims. As a preliminary matter, the court notes that plaintiff's claims are timely under the FLSA and NYLL. The FLSA statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered 'willful,' and the three-year statute of limitations applies." Rodriguez v. Queens Convenience Deli Corp., No. 09 CV 1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citation omitted). The NYLL statute of limitations is six years. N.Y. LAB. L. §§ 198(3), 663(3). Both statutes start to run when the employee begins working for the employer. Rodriguez, 2011 WL 4962397, at *2. Plaintiff began working for defendants around October 2021 and initiated this action less than one year later on September 7, 2022. (See generally Compl.) Plaintiff's claims are therefore timely under the FLSA and NYLL.

i. Unpaid Overtime

Plaintiff alleges that defendants failed to compensate him for certain overtime "due to an impermissible policy of rounding hours down." (Compl. ¶ 59; see also id. ¶¶ 52–53, 63–64.) Under the FLSA and NYLL, an employee must "be compensated at a rate of no less

[2] As I find that the individual defendants and the corporate defendants were jointly plaintiff's employers, each defendant is jointly and severally liable under the FLSA and NYLL for any damages award made in plaintiff's favor. See Cavalotti v. Daddyo's BBQ, Inc., No. 15 CV 6469, 2018 WL 5456654, at *11 (E.D.N.Y. Sept. 8, 2018) (collecting cases).

than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a) and N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2). "Plaintiffs must provide sufficient detail demonstrating that they worked more than forty hours a week and were not compensated for the hours worked in excess of forty hours." Prudencio Trejo v. Blanca's Bakery & Deli Inc., No. 23 CV 6063, 2025 WL 1029523, at *13 (E.D.N.Y. Jan. 8, 2025) (citing Nakahata,723 F.3d at 201), report and recommendation adopted in relevant part, 2025 WL 850625 (E.D.N.Y. Mar. 19, 2025). Plaintiff states that throughout his employment, he worked between forty-eight and sixty hours per week at a regular rate of $16 and an overtime rate of $24. (Compl. ¶¶ 31–32, 34.) Plaintiff further states that because defendants "rounded [his hours] down to the nearest hour," his weekly wages did not account for all hours that he worked. (Id. ¶ 35.) These allegations suffice to establish defendants' liability for failing to pay plaintiff the overtime compensation to which he was entitled under the FLSA and NYLL. See Albim v. 1656 Wireless Inc., No. 23 CV 1732, 2025 WL 2791384, at *7 (E.D.N.Y. Sept. 8, 2025) (finding defendants liable for FLSA and NYLL overtime violations based on allegations that plaintiffs were not paid time-and-a-half despite working between seventy-two and 93.5 hours per week); Newman v. W. Bar & Lounge, Inc., No. 20 CV 1141, 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (finding defendants liable for FLSA and NYLL overtime violations where plaintiff alleged "that he regularly worked sixty-two (62) hours per week while employed by defendants" and was never paid an overtime premium).

Plaintiff is entitled to an overtime premium for all hours worked over forty at one and one-half times his regular rate of pay. 29 U.S.C. § 207(a); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. Plaintiff's overtime rate was $24, which is one-and-one-half times his regular rate

of $16. (Compl. ¶ 32). Plaintiff estimates that defendants did not pay him for 2.5 hours of overtime each week of his employment. (Lee Decl., Ex. D.) Plaintiff worked for defendants for approximately thirty-seven weeks. Therefore, I find plaintiff is entitled to unpaid overtime damages of $2,220 (2.5 hours of unpaid overtime per week × $24 per hour × 37 weeks).

ii. Liquidated Damages

Plaintiff seeks and is entitled to liquidated damages. (See Mem. at 13–14; Lee Decl., Ex. G (proposing award of "New York State Liquidated damages").) The NYLL provides for liquidated damages for wage claim violations, calculated in an amount equal to one hundred percent of the total amount of wages found to be due. N.Y. Lab. L. §§ 198(1-a), 663(1). "If the employer shows that 'the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation' of the FLSA or NYLL, a court may decide not to award liquidated damages." Sanchez v. Hyper Structure Corp., No. 19 CV 4524, 2023 WL 2815717, at *11 (E.D.N.Y. Feb. 24, 2023) (quoting 29 U.S.C. § 260; and citing N.Y. Lab. L. § 198(1-a) (granting good-faith exception to liquidated damages)). Because defendants have not responded to the motion, there is no showing of good faith, and liquidated damages are appropriate. Id. (citing Herrera v. Tri-State Kitchen & Bath, Inc., No. 14 CV 1695, 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015)). Accordingly, plaintiff is entitled to $2,220 in liquidated damages.

iii. Tools of the Trade

Plaintiff alleges that defendants violated the FLSA and NYLL by failing to reimburse him for tools of the trade totaling $15,371.43. (Lee Decl., Ex. D).[3] "An employer

[3] Plaintiff's weekly expenditures are unclear. The court reads the complaint to allege that plaintiff spent a total of $650 per week on vehicle maintenance and tools. (See Compl. ¶ 36

*(Continued . . . .)*

violates the FLSA if it requires an employee to purchase 'tools of the trade which will be used in or are specifically required for the performance of the employer's particular work' and 'the cost of such tools [purchased by the employee] cuts into the minimum or overtime wages required to be paid to [the employee].'" Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 476 (S.D.N.Y. 2015) (second alteration in original) (quoting 29 C.F.R. § 531.35). The same is true under NYLL. See N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.7(c) ("If an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage."). "A court may accept a plaintiff's sworn statements to substantiate an expense for tools of the trade when lacking receipts or other documentation." Gautier v. 3 Way Rest., Inc., No. 20 CV 3776, 2025 WL 2807124, at *5 (S.D.N.Y. May 8, 2025) (citing Cocoletzi v. Fat Sal's Pizza II, Corp., 15 CV 2696, 2019 WL 92456, at *15 (S.D.N.Y. Jan. 3, 2019)), report and recommendation adopted, 2025 WL 2806606 (S.D.N.Y. Oct. 2, 2025)).

Plaintiff has not produced receipts or other documentation to substantiate his reimbursement request of $15,371.43, and his declaration fails to mention weekly costs of any kind. (See generally Garcia Decl.) Absent any explanation of plaintiff's estimated expenses, the court cannot evaluate his request for damages or understand the relative costs of his requested reimbursements. Pinzon v. 168 8th Ave. Food Corp., No. 20 CV 6156, 2021 WL 4894678, at *5

("Plaintiff spent about two hundred fifty dollars ($250) per week to maintain the [company] vehicle. In addition, Plaintiff was required to purchase his own tools, such as jacks, jumper cables, slim jim, wheel lock tools, and air compression tools. In total, Plaintiff spent four hundred dollars ($400) per week on tools."). The damages chart, however, cites "uniform [*sic*] expenses per week" of $400. (See Lee Decl., Ex. D; see also Mem. at 6–7 ("Plaintiff was required to expend approximately $400 per week, to (i) maintain the company vehicle Defendants provided him (including gas) and (ii) purchase tools necessary for the performance of the duties Defendants assigned to him.").)

(S.D.N.Y. July 14, 2021), report and recommendation adopted, 2021 WL 4894614 (S.D.N.Y. Sept. 1, 2021). Accordingly, I find defendants not liable for tools of the trade expenses. See Gautier, 2025 WL 2807124, at *5 (finding defendants not liable for tools of the trade expenses because plaintiff failed to allege his claim with sufficient detail); Mendoza v. Cavallo's of Chelsea, Inc., No. 18 CV 11147, 2022 WL 2531343, at *14 (S.D.N.Y. Apr. 12, 2022) (finding defendants not liable for equipment costs where plaintiff "provided no indication of the amount of money that he had to expend for any particular purpose"), report and recommendation adopted, 2022 WL 4387494 (S.D.N.Y. Sept. 22, 2022); Pinzon 2021 WL 4894678, at *5–6 (finding defendants not liable for tools of the trade expenses where plaintiff failed to provide the court with receipts or a sworn declaration accounting for his alleged costs).

iv. Wage Statement and Notices

Plaintiff alleges that defendants "failed to provide wage and hour notices, at the date of hiring and annually thereafter," (Compl. ¶¶ 37, 40), and that his wage statements were inaccurate (id. ¶ 38) in violation of the New York Wage Theft Protection Act (the "WTPA"). The WTPA requires employers to provide annual wage notices to employees hired after April 9, 2011, and to provide each employee with accurate wage statements each time wages are paid. N.Y. Lab. L. §§ 195(1)(a), 195(3). Section 195(1) requires an employer to provide employees a written notice at the time of hiring, containing, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other . . . allowances." Id. § 195(1)(a). Section 195(3) requires an employer to provide employees with certain wage statement information "with every payment of wages." Id. § 195(3). Failure to comply with either section of the law renders employers liable for damages for each instance that the violations occurred or continued to occur. Id. § 198(1-b) (stating that damages for wage

notice violations under § 195(1) accumulate at rate of $50 per day, but not to exceed $5,000); § 198(1-d) (stating that damages for wage statement violations under § 195(3) accumulate at rate of $250 per day but may not exceed $5,000).

Plaintiff must establish Article III standing to maintain these claims. A "technical violation" triggering statutory damages confers Article III standing only if the plaintiff plausibly alleges an actual and concrete injury resulting from the violation. See Guthrie v. Rainbow Fencing Inc., No. 21 CV 5929, 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022), report and recommendation adopted as modified, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023), aff'd, 113 F.4th 300 (2d Cir. 2024) ("Guthrie II"). To demonstrate standing to pursue a WTPA claim in federal court, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm." Guthrie II, 113 F.4th at 308; see also TransUnion LLC v. Ramirez, 594 U.S. 413, 440 (2021) ("[B]are procedural violations, divorced from any concrete harm, . . . do[ ] not suffice for Article III standing." (internal quotation marks and citation omitted)). For example, a plaintiff may have suffered an injury-in-fact sufficient to establish standing if an inaccurate statement prevented him from being timely and fully paid. Guthrie II, 113 F.4th at 309. In other words, "the plaintiff-employee must support a plausible 'theory as to *how* he was injured by [the] defendants' failure to provide the required documents.'" Id. (emphasis and alteration in original) (quoting Quieju v. La Jugueria Inc., No. 23 CV 264, 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023)).

Here, plaintiff alleges that defendants failed to provide him with a wage notice as required by the WTPA, section 195(1)(a) of the NYLL. (Compl. ¶ 37.) Plaintiff also alleges that defendants failed to provide him with accurate wage statements, in violation of section 195(3) of the NYLL. (Id. ¶ 38.) Because the complaint fails to allege that plaintiff suffered any

downstream harm due to the alleged WTPA violations, I find that plaintiff lacks standing to bring these claims. See Guthrie II, 113 F.4th at 311 ("Without plausible allegations that he suffered a concrete injury because of [defendants'] failure to provide the required notices and statements, [plaintiff] lacks standing to sue for that statutory violation."); McLaughlin v. Onanafe Mgmt. Sols. LLC, No. 22 CV 6792, 2024 WL 4184485, at *11 (E.D.N.Y. Sept. 14, 2024) (finding that plaintiff failed to establish the requirements for Article III standing where the complaint failed to allege that plaintiff "suffered a concrete injury because of [defendants'] failure to provide the required notices and statements"), report and recommendation adopted, 2024 WL 4355485 (E.D.N.Y. Sept. 30, 2024). Plaintiff's WTPA claims are therefore dismissed without prejudice.

## III. Hostile Work Environment Claims

### A. NYSHRL and NYCHRL Liability

Plaintiff also alleges that defendants subjected him to a hostile work environment because of his race in violation of the NYSHRL and NYCHRL. (Compl. ¶¶ 69–82.) To establish a NYSHRL hostile work environment claim, a plaintiff must show that he was subjected to "inferior terms, conditions or privileges of employment because of [his] membership in one or more . . . protected categories," including race. N.Y. Exec. L. §§ 296(1)(h), 300 ("The provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed."). Courts have interpreted this amended pleading standard to be analogous to that of the NYCHRL, which requires a plaintiff only to show that he was treated less well than other employees because of his protected characteristics. Choudhury v. Northwell Health, Inc.,

No. 23 CV 1406, 2025 WL 2300220, at *7 (E.D.N.Y. Aug. 8, 2025) (quoting Wheeler v. Praxair Surface Techs., Inc., 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023)). Under this more lenient standard, a hostile work environment claim should only be dismissed if the plaintiff alleges nothing more than a petty slight or trivial inconvenience. See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 114 (2d Cir. 2013); see also Pryor v. Jaffe & Asher, LLP, 992 F. Supp. 2d 252, 260 (S.D.N.Y. 2014) ("Employers may only avoid liability under the NYCRHL for conduct that results in an employee being treated less well because of [a protected category], when the conduct complained of constitutes nothing more than petty slights and trivial inconveniences." (internal quotation marks and citations omitted)).

Here, plaintiff's undisputed allegations establish a hostile work environment claim under the NYSHRL and NYCHRL because he plausibly asserts that he was treated "less well" than other employees because of his race. Plaintiff alleges that "because he was African American[,] [h]e was constantly, on a daily basis, called 'nigger' by his Manager Luis." (Compl. ¶ 43 ("Luis [ ] would say things like, 'What's up Nigger?' and 'Hurry up Nigger.'").) Plaintiff told his manager "several times" that "he did not want to be called a 'Nigger'" but "Luis continued to call Plaintiff a 'Nigger.'" (Id. ¶ 44.) Plaintiff and other African American employees "were given the hardest routes" and plaintiff "was given a car without air conditioning." (Id. ¶ 45.) "When Plaintiff complained about this to Manager Luis, nothing was done." (Id. ¶ 46.) These allegations sufficiently show that plaintiff was treated less well due to his race. See, e.g., La Grande v. DeCrescente Distrib. Co., 370 F. App'x 206, 210 (2d Cir. 2010) ("[P]erhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as [the N-word] by a supervisor in the presence of his subordinates."); Philip v. Gtech Corp., No. 14 CV

9261, 2016 WL 3959729, at *25 (S.D.N.Y. July 20, 2016) (concluding that "an African-American plaintiff's personal observation of his supervisor using the [N-word]—combined with other, secondhand evidence of racial bias—" is sufficient to survive summary judgment under the NYCHRL).

B. Damages

According to the damages chart attached to plaintiff's counsel's declaration, plaintiff seeks $50,000 in compensatory damages and $50,000 in punitive damages under the NYSHRL and NYCHRL. (Lee Decl. ¶ 31, Ex. D; see also Mem. at 14 (stating only that "[p]laintiff invokes his statutory right to payment of these compensatory and punitive damages in full").)

i. Compensatory Damages

"Victims of employment discrimination are entitled to reasonable damages that would make the plaintiff whole for injuries suffered on account of unlawful employment discrimination." Rodriguez v. Express World Wide, LLC, No. 12 CV 4572, 2014 WL 1347369, at *5 (E.D.N.Y. Jan. 16, 2014), report and recommendation adopted, 2014 WL 1350350 (E.D.N.Y. Mar. 31, 2014). However, as stated above, a party's default is not considered an admission of damages. Greyhound, 973 F.2d at 158. Once a party's default as to liability is established, a plaintiff still must prove damages. Gutman v. Klein, No. 03 CV 1570, 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." (citing Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974))). Plaintiff tells the court nothing about how he calculated his requested compensatory damages of $50,000. Plaintiff's declaration makes no mention of suffering any

loss of employment, loss of income, loss of employment benefits, emotional distress, embarrassment, or reputational damage as a direct and proximate result of defendants' acts. The New York City Human Rights Commission has deemed awards of $1,000 to be sufficient in cases where complainants did not establish any particular damage "other than what a decent and reasonable individual would suffer when faced with such ignorant behavior." Okoumou v. Cnty. Recovery Corp., OATH No. 09-445, 2009 WL 6910263, at *2 (N.Y.C. Comm. Hum. Rts. June 1, 2009); see also Shalto v. Bay of Bengal Kabob Corp., No. 12 CV 920, 2013 WL 867429, at *10 (E.D.N.Y. Feb. 6, 2013) (awarding compensatory damages of $1,000 where plaintiff failed to explain "how he reache[d] the figure of $25,000 in compensatory damages"), report and recommendation adopted in relevant part, 2013 WL 867420 (E.D.N.Y. Mar. 7, 2013). Accordingly, plaintiff is awarded compensatory damages of $1,000.

ii. Punitive Damages

Punitive damages are available under the NYCHRL only. See N.Y.C. Admin. Code § 8-502 (sanctioning punitive damages for "unlawful discriminatory practices"); Farias v. Instructional Sys., Inc., 259 F.3d 91, 101 (2d Cir. 2001) ("It is undisputed that the New York State Human Rights Law does not provide for punitive damages." (citations omitted)).

Under the NYCHRL, punitive damages are available if defendants have discriminated with "willful or wanton negligence," recklessness, or a "conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." Chauca v. Abraham, 885 F.3d 122, 124 (2d Cir. 2018) (quoting Chauca v. Abraham, 89 N.E.3d 475, 481 (N.Y. 2017)). This standard "represent[s] the lowest threshold, and the least stringent form, for the state of mind required to impose punitive damages." Casmento v. Volmar Constr., Inc., No. 20 CV 944, 2022 WL 15773966, at *10 (S.D.N.Y. Oct. 28, 2022)). However, "the New York Court of

Appeals has expressly rejected the idea that 'a punitive damages charge is automatic on a finding of liability' under the NYCHRL, instead 'requiring an appropriate showing of heightened culpability for [an award of] punitive damages.'" Edelman v. NYU Langone Health Sys., 141 F.4th 28, 43 (2d Cir. 2025) (quoting Chauca, 89 N.E.3d at 481). "Such conduct requires a high degree of moral culpability." Id. (internal quotation marks and citation omitted).

"Awards of punitive damages are by nature speculative, arbitrary approximations." Payne v. Jones, 711 F.3d 85, 93 (2d Cir. 2013). "No objective standard exists that justifies the award of one amount, as opposed to another, to punish a tortfeasor appropriately for his misconduct." Id. Nevertheless, "[t]he Supreme Court has delineated several factors for courts to consider in assessing the reasonableness of punitive damages, including: '(1) the degree of reprehensibility of the defendant's conduct; (2) the difference between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and the civil penalties imposed in comparable cases.'" Tenecora v. Ba-kal Rest. Corp., No. 18 CV 7311, 2020 WL 8771256, at *26 (E.D.N.Y. Nov. 30, 2020) (quoting Antoine v. Brooklyn Maids 26, Inc., 489 F. Supp. 3d 68, 101 (E.D.N.Y. 2020)), report and recommendation adopted in part, 2021 WL 424364 (E.D.N.Y. Feb. 8, 2021). "In addition, no matter how egregious the underlying conduct, the court is required to consider the defendant's financial circumstances in determining an award of punitive damages." Antoine, 489 F. Supp. 3d at 101.

Defendants' conduct meets the standard for punitive damages under the NYCHRL. Plaintiff alleges that he was subjected constantly, on a daily basis, to racial slurs by his manager and defendants' employee. (See Compl. ¶ 43.) Despite plaintiff's repeated complaints and protestations, defendants took no action to address or remedy their employee's

conduct. (Id. ¶¶ 44, 46.) "Because [d]efendant[s] ha[ve] not shown that [they] made good-faith efforts to prevent discrimination in the workplace, an award of punitive damages is appropriate." Bethel v. Royal Leaf NY LLC, No. 24 CV 9073, 2025 WL 3216640, at *10 (S.D.N.Y. Oct. 9, 2025) (punitive damages appropriate where defaulting defendants "failed to take any action to address or remedy" gender- and race-based harassment of plaintiff-employee in the workplace), report and recommendation adopted, 2025 WL 3216413 (S.D.N.Y. Nov. 18, 2025); see also Bloise v. Q4 Generational Wealth, Inc., 22 CV 10488, 2025 WL 4685566, at *10 (S.D.N.Y. Dec. 30, 2025) (punitive damages warranted where "[p]laintiff allege[d] repeated instances on almost a daily basis of [defendant's] employees . . . using racial slurs directed towards her"), report and recommendation adopted, 2026 WL 880241 (S.D.N.Y. Mar. 31, 2026).

With respect to the quantum of punitive damages, the court finds plaintiff's request of $50,000 to be excessive. "Under New York law, whether to award punitive damages and how much to award are 'primarily questions which reside in the sound discretion of the original trier of the facts,' . . . subject to constitutional limits." Kargar v. Kamolov, No. 22 CV 664, 2025 WL 4063721, at *19 (S.D.N.Y. Dec. 16, 2025) (quoting Greenbaum v. Handelsbanken, 67 F. Supp. 2d 228, 267 (S.D.N.Y. 1999) (Sotomayor, C.J., sitting by designation)), report and recommendation adopted, 2026 WL 149786 (S.D.N.Y. Jan. 20, 2026). "Courts in this Circuit routinely award punitive damages in an amount equal to or less than an award of compensatory damages." Bloise, 2025 WL 4685566, at *10 (first citing Pizarro v. Quezada, No. 24 CV 2422, 2025 WL 2865251, at *4 (2d Cir. Oct. 9, 2025) ("[C]ourts in this circuit have often awarded punitive damages in an amount equal to, or less than, an award of compensatory damages . . . ."); then citing Duarte v. St. Barnabas Hosp., 341 F. Supp. 3d 306, 333 (S.D.N.Y. 2018) (finding punitive damages award equal to compensatory damages award

appropriate)). Having considered all the relevant factors, the court finds punitive damages of $1,000 to be appropriate. Additionally, the court notes that, by defaulting, defendants have surrendered the opportunity to demonstrate that their financial circumstances should constrain the amount of any such award. See Antoine, 489 F. Supp. 3d at 102. Accordingly, plaintiff is awarded punitive damages of $1,000.

**IV. Attorney's Fees**

As the prevailing party, plaintiff is entitled to recover reasonable attorney's fees and costs under the FLSA and NYLL. See 29 U.S.C. § 216(b), N.Y. Lab. L. §§ 198, 663(1). Attorney's fees are also available under the NYCHRL. See N.Y.C. Admin. Code § 8–502(f).

Courts in this Circuit exercise their discretion to determine the reasonableness of attorney's fees using the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). The calculation of a reasonable fee is within the district court's discretion. Id. The burden is on the party seeking the fee award to prove that the requested fees and hours are reasonable. See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam).

The court first assesses whether plaintiff's counsel requests a reasonable hourly rate. Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. "[C]ourts assess the reasonableness of hourly rates by comparing the rates

requested with the prevailing rates charged by attorneys practicing in the district where the court sits." Abularach v. High Wing Aviation LLC, No. 22 CV 1266, 2025 WL 405986, at *6 (E.D.N.Y. Feb. 5, 2025); see also Dacas v. Duhaney, No. 17 CV 3568, 2020 WL 4587343, at *3 (E.D.N.Y. June 18, 2020) ("This rate should be based on rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation."). "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." Ortega v. Champagne Room BK, Inc, No. 21 CV 1125, 2026 WL 2018473, at *3 (E.D.N.Y. July 13, 2026) (quoting Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc., No. 21 CV 2015, 2023 WL 2707024, at *7 (E.D.N.Y. Mar. 30, 2023)); see also Quispe v. Stone & Tile Inc., 583 F. Supp. 3d 372, 380 (E.D.N.Y. 2022) ("In this district, law firm partners in FLSA cases generally receive between $300 and $450 per hour.").

Counsel's hourly rates far exceed those ordinarily charged in this district for similar matters. In this case, plaintiff's counsel C.K. Lee seeks an hourly rate of $1,600 for his own work. (Lee Decl., Ex. E at 1.) He also seeks hourly rates of $900 for eighth-year associate Rony Guldmann, $800 for seventh-year associate James Jackson, $450 for law clerks Lucie Ma and Ashlesha Vaidya, and $325 for paralegals Ulysses Kim and Shane Leible. (Id.) These rates are unreasonably high. See, e.g., Garcia v. 120 MP, LLC, No. 18 CV 6408, 2020 WL 2319126, at *2 (S.D.N.Y. May 8, 2020) (approving hourly rates of $350 for Mr. Lee, $300 for associates, and $200 for paralegals); Hristova v. 3321 Astoria, Inc., No. 17 CV 1633, 2018 WL 11697234, at *2 (E.D.N.Y. Dec. 4, 2018) (approving hourly rates of $375 for Mr. Lee, $200 for associates, and $100 for paralegal); Alvarez v. 894 Pizza Corp., No. 14 CV 6011, 2016 WL 4536574, at *7 (E.D.N.Y. Aug. 2, 2016), report and recommendation adopted, 2016 WL 4540817 (E.D.N.Y.

Aug. 30, 2016) (approving hourly rates of $400 for Mr. Lee and $80 for paralegals). Therefore, I will reduce the hourly rates as follows: $400 for Mr. Lee, $300 for Rony Guldmann and James Jackson, $200 for Lucie Ma and Ashlesha Vaidya, and $100 for Ulysses Kim and Shane Leibl.

The court next looks to the reasonableness of the number of hours billed. "Courts examine the contemporaneous time records to exclude what appears to be excessive or unnecessary hours and with a view to the value of the work product of the specific expenditures to the client's case." Morales v. Los Cafetales Rest. Corp., No. 21 CV 1868, 2023 WL 7684775, at *8 (E.D.N.Y. Oct. 12, 2023) (internal quotation marks and citation omitted), report and recommendation adopted, 2023 WL 8021460 (E.D.N.Y. Nov. 20, 2023). The submitted billing records show that each attorney, law clerk, or paralegal spent the following amount of time on this case: C.K. Lee, 1.5 hours; Rony Guldmann, 20.4 hours; James Jackson, 15.2 hours; Lucie Ma, 54.5 hours; Ashlesha Vaidya, 26.9 hours; Ulysses Kim, 1 hour; and Shane Leible, 4.6 hours. (Lee Decl., Ex. E.) Having reviewed the records, I find 124.1 hours to be excessive for this relatively straightforward employment action, notwithstanding defendants' lack of cooperation with discovery. "In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, as a practical means of trimming the fat from a fee application." Garcia v. 120 MP, LLC, No. 18 CV 6408, 2020 WL 2319126, at *2 (S.D.N.Y. May 8, 2020). The court therefore reduces the total hours billed by plaintiff's counsel by twenty percent. Based on the foregoing adjustments, the court awards plaintiff $22,496 in attorney's fees, calculated as follows:

| Timekeeper | Adjusted Hourly Rate | Hours Billed | Total Fees |
|---|---|---|---|
| C.K. Lee | $400 | 1.5 | $600 |
| Rony Guldmann | $300 | 20.4 | $6,120 |
| James Jackson | $300 | 15.2 | $4,560 |
| Lucie Ma | $200 | 54.5 | $10,900 |
| Ashlesha Vaidya | $200 | 26.9 | $5,380 |
| Ulysses Kim | $100 | 1 | $100 |
| Shane Leibl | $100 | 4.6 | $460 |
| Sum Total | | | $28,120 |
| **Less 20% Across-the-Board Reduction** | | | **$22,496** |

## CONCLUSION

For the reasons set forth above, plaintiff's motion for default judgment is granted in part and denied in part. Plaintiff's WTPA claims are dismissed without prejudice for lack of standing. The Clerk of the Court is directed to enter judgment, jointly and severally, against defendants Pop A Lock New York Inc., Automotive Locksmith Supply Inc., All City Services & Dispatch Inc., Carl Napolitano, Nicholas Napolitano, and Jennifer Cannizzaro. The Court awards plaintiff $2,220 in unpaid overtime wages, $2,220 in liquidated damages, $1,000 in compensatory damages, $1,000 in punitive damages, and $22,496 in attorney's fees, for a total of $28,936. Plaintiff is additionally awarded post-judgment interest, to be calculated from the date the Clerk of the Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961(a). Plaintiff is directed to serve a copy of this Order and the forthcoming Judgment on defendants by regular mail at their last known addresses and note such service on the docket.

SO ORDERED.

Robert M. Levy
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
August 10, 2026